SMITH, Circuit Judge.
The Alliance Insurance Company and Farmers Alliance Mutual Insurance Company (collectively “Alliance”) appeal the district court’s[1] order granting summary judgment to the Commissioner of the *549 Minnesota Department of Commerce (the “Commissioner”) and denying summary judgment to Alliance on its claim for declaratory relief. The district court found that the Federal Crop Insurance Act (“FCIA”) did not preempt certain general regulatory provisions contained in state insurance law. We affirm.
I.
Alliance issues crop insurance policies to a number of sugar beet farmers in southern Minnesota. The policies are reinsured by the Federal Crop Insurance Corporation (“FCIC”), a wholly-owned government corporation established within the Department of Agriculture. The policies are regulated by the FCIA. 7 U.S.C. § 1501 et seq. A large group of Minnesota sugar beet farmers suffered substantial losses when a series of freezes and thaws damaged sugar beets in 2000. After the losses, the sugar beet farmers submitted claims to.Alliance. Alliance declined coverage to the farmers based on the farmers’ alleged noncompliance with Alliance’s submission requirements. Predictably, the farmers disagreed with Alliance’s finding of noncompliance.
The Commissioner initiated a market conduct examination of Alliance to determine whether Alliance complied with Minnesota Statutes Chapter 72A[2] in responding to the growers’ claims. Alliance filed a complaint against the Commissioner in district court on August 15, 2002, asserting that Commissioner James C. Bernstein [3] did not have legal authority to undertake the examination because the FCIA alone regulates FCIC crop insurance policies and the FCIA preempts any state law regulating such insurance. Alliance and the Commissioner filed cross motions for summary judgment.
On April id, 2003, the district court granted the Commissioner’s motion for summary judgment and dismissed the case with prejudice. The district court found that under Minnesota law the Commissioner is not precluded from enforcing state regulatory standards designed to ensure that insurance companies handle their policy holders’ claims in a reasonable manner. The court determined that under 7 U.S.C. § 1506(1), Congress preempted only those state insurance statutes that are inconsistent with FCIA, and not all state insurance laws, as argued by Alliance. Relying on Minnesota Statute § 60A.031, the court réasoned that the Commissioner is permitted to examine Alliance’s insurance affairs, practices, and conditions as it would any other insurance company doing business in Minnesota. Alliance filed a timely notice of appeal ón May 14, 2003.
II.
Congress enacted the FCIA in 1938 “to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance.” 7 U.S.C. § 1502 (1994). Under the original scheme of the FCIA, only the FCIC issued crop insurance policies and processed claims based on those policies. When the FCIA was amended, Congress authorized the FCIC to utilize private insurance companies in providing crop insurance to the nation’s farmers. 7 U.S.C. § 1508(a). Currently, the FCIC insures farmers directly and reinsures private companies that in *550 sure farmers. Williams Farms of Homestead, Inc. v. Rain and Hail Ins. Serv., Inc., 121 F.3d 630, 634 (11th Cir.1997).
Alliance, a private insurance company, argues that the Commissioner’s examinations designed to investigate Alliance’s treatment of Minnesota farmers are expressly preempted by the FCIA and its accompanying regulations. Specifically, Alliance contends that the FCIA comprehensively regulates FCIC crop insurance and directly conflicts with state regulatory procedures. Alliance asserts that the Commissioner’s market conduct examination would indisputably “affect or govern” Alliance’s “agreements, contracts, or actions” in violation of the FCIA. In contrast, the Commissioner argues that the FCIA does not preempt state law entirely but only to the extent that state laws are inconsistent with the FCIA and certainly not when a company is acting outside its authority as provided by the FCIA.
In relevant part, the FCIC’s regulations provide:
(a) No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation.
(b) The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited from taking against the Corporation or any party that is acting pursuant to this part. Such entities may not:
(1)Impose or enforce liens, garnishments, or other similar actions against proceeds obtained, or payments issued in accordance with the Federal Crop Insurance Act, these regulations, or contracts or agreements entered into pursuant to these regulations;
(2) Tax premiums associated with policies issued hereunder;
(3) Exercise approval authority over policies issued;
(4) Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (nothing herein is intended to preclude any action on the part of any authorized State regulatory body or any State court or any other authorized entity concerning any actions or inactions on the part of the agent, company or employee of any company whose action or inaction is not authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations or procedures issued by the Corporation); or
(5) Assess any tax, fee, or amount for the funding or maintenance of any State or local insolvency pool or other similar fund.
The preceding list does not limit the scope or meaning of paragraph (a) of this section.
7 C.F.R. § 400.352 (emphasis added).
In the present case, the Commissioner maintains that in order to determine whether Alliance acted outside of its authority in addressing the Minnesota sugar beet farmers’ claims, he must be able to *551 conduct examinations of Alliance’s affairs, practices, and conditions pursuant to Minnesota Statute § 60A.031.[4]
The Supremacy Clause[5] enables Congress, in the exercise of its legislative authority, to preempt state law. Louisiana Public Serv. Comm’n v. FCC, 476 U.S. 355, 368, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). To do so, Congress must either expressly state its intention or legislate so comprehensively that no room is left for state legislation in the subject area. Id. There are several methods by which courts may discern whether Congress intends to preempt state law when it enacts certain federal legislation.
First, a federal law may expressly preempt a state law. Next, preemption will occur of necessity if a state law and a federal law are in direct conflict. When compliance with both federal and state regulations is a physical impossibility or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, then the state law is preempted. Also, congressional intent to preempt may be inferred from enactment of federal laws that are so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. In addition, preemption will be presumed if the subject matter of the legislation concerns a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or if the objective of the federal law or the duties it imposes reveal the same purpose.
Heart of America Grain Inspection Serv., Inc. v. Missouri Dept. of Agriculture, 123 F.3d 1098, 1103 (8th Cir.1997) (internal quotations and citations omitted). “[Preemption] may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may [preempt] state regulation.” Louisiana Public Serv. Com’n, 476 U.S. at 369, 106 S.Ct. 1890.
The FCIA provides that state law applies to FCIA contracts, with two exceptions: (1) when FCIC contracts provide that state law does not apply or (2) when state law is inconsistent with FCIC contracts. 7 U.S.C. § 1506(1). Neither exception applies in this case.
According to Alliance, when the FCIA regulations standardized crop insurance, they simultaneously compelled exclusive federal jurisdiction. Although an issue of first impression in this circuit, our sister circuits deciding the question agree that the FCIA does not displace state insurance law regulations. Williams Farms of Homestead, Inc., 121 F.3d at 634 (holding that Congress did not draft “FCIA to expressly preempt state law, nor does the wording of the statute or its legislative history evince an intent to preempt state law”); Meyer v. Conlon, 162 F.3d 1264, 1270 (10th Cir.1998) (reasoning that the FCIA does not preempt state law).
Alliance suggests that the following federal regulatory language preempts state regulatory law:
(a) No State ... shall have the authority to promulgate regulations ... that directly or indirectly affect or govern agreements, contracts, or actions authorized by ... by the ... [FCIC].
*552 7 C.F.R. § 400.352. However, the regulation continues:
Nothing herein is intended to preclude any action on the part of any authorized State -regulatory body ... concerning any actions or inactions on the part of the .'.. company whose action or inaction is not authorized or required under the [FCIC] or ... authorized by the [FCIA],
7 C.F.R. § 400.352. This language “permits lawsuits based on agents’ actions not authorized- by the FCIA or the FCIC, negating [Alliance’s] argument that the regulations interpret the FCIA as wholly preemptive.” Meyer, 162 F.3d at 1269. We hold that the FCIA did not'intend to preempt all state-based regulation of companies that sell federally reinsured crop insurance.
We find no conflict[6] between the FCIA and Minnesota state law authorizing the Commissioner’s market conduct examinations. Alliance, relying on 7 C.F.R. § 400.352(a), argues that because the examinations “directly or indirectly affect” the manner in which Alliance handles its claims, the examinations are preempted. Specifically,- Alliance contends that the Commissioner’s examinations are at odds-an obstaele-with Congress’s purpose in establishing crop insurance uniformly throughout the United States. We find this argument unpersuasive.
Here, the parties concede that, at its present stage, the Commissioner’s .examination is purely investigatory. To the extent the examinations do not impose any duty or obligation upon Alliance as crop insurers to process claims in a certain way, Alliance may comply with both state and federal law. The Commissioner’s proposed examination may-well serve a useful purpose and disclose material differences between the two systems. It may even expose substantial potential deficiencies, shortcomings, and unfairness in the claims procedures dictated by the regulations promulgated by the federal corporation. If, in fact, the “FCIC, as always, remains open to suggestions from any person, including State insurance regulatory bodies, on ways to improve the program including changes in policy terms of [sic] conditions,” 55 Fed.Reg. 23066-01, 23067 (June 6, 1990), one might think that it and the appellants would welcome the Minnesota Commissioner’s investigation instead of spending time going to federal court to try to stop it.
Should the Commissioner attempt to impose claims handling duties or obligations upon Alliance in the performance of crop insurance policies, the circumstances would be altered substantially. The district court found that, to the extent the Commissioner discovers violations of Minnesota law authorized or required by FCIA, his authority to regulate Alliance is preempted. We hold likewise. Thus far, the Commissioner has only sought to inquire into the actipns of a private insurance company’s treatment of Minnesota crop insurance policyholders. We find that the Commissioner’s inquiry is not inconsistent with FCIA; therefore, it is not preempted to the extent it is limited in scope and does not stand as an obstacle to the accomplishment of the purpose of the FCIA.
Alliance also argues that the Commissioner’s market conduct examinations are improper because the Commissioner seeks *553 to require Alliance to pay the Commissioner’s expenses for conducting the regulatory investigation. The Commissioner urges that it is not the purpose of the examinations to impose duties or obligations. See Minn.Stat. § 60A.03, subd. 2 (charging the Commissioner with the duty of enforcing Chapter 72A); Minn.Stat. § 60A.031, subd. 2a (authorizing examinations so Commissioner can fulfill his duty to enforce Chapter 72A). Alliance’s concern has merit. Should the Commissioner attempt to require Alliance to pay the cost of the Commissioner’s investigation, then the Commissioner might well be imposing the type of individual state obligation that uniform federal legislation is designed to avoid.
We conclude that the district court did not err in finding that the FCIA and regulations promulgated pursuant to it do not wholly preempt regulatory insurance standards contained in Minnesota Statutes Chapter 72A or the Commissioner’s jurisdiction under Minnesota Statute § 60A.031 to examine Alliance’s insurance affairs, practices, and conditions. However, we, as did the district court, note that the Commissioner must tread carefully in its investigation to “avoid running afoul of the FCIA.”
III.
We affirm the district court’s grant of summary judgment in favor of the Commissioner.

. The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

. This .provision is designed to ensure that insurance companies handle their policy holders’ claims in a reasonable manner.

. Bernstein has since been succeeded as Commissioner by Glenn R. Wilson.

. This statute allows the Commissioner to enforce the reasonableness standards identified in Minnesota Statutes Chapter 72A through examinations of insurance companies and "all aspects of the examinee's affairs, practices, and conditions.” Minn.Stat. § 60A.031, subd. 2a.

. U.S. Const, art. VI, cl. 2.

. Federal law preempts state law with which it actually "conflicts.” Such a conflict exists if either (1) compliance with both the state and federal laws is a physical impossibility or (2) state law stands as an obstacle to the accomplishment of the purposes of Congress. Boggs v. Boggs, 520 U.S. 833, 844, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997).